# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| MICHAEL SCHEIBLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-05040-CV-SW-WJE-SSA |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Michael Scheibley seeks judicial review[1] of a final administrative decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 401-434, and supplemental security income under Title XVI of the SSA, 42 U.S.C. §§ 1382–1385. For the following reasons, the Court reverses and remands the decision of the Commissioner for further consideration and development of the record.

### I. Background

Mr. Scheibley filed a claim for Disability Insurance Benefits on March 22, 2017, and Supplemental Security Income on March 27, 2017. (AR 232-33, 234-40). He alleged a disability onset date of January 9, 2016, due primarily to severe degenerative disc disease, L3-L4-L5 bulging discs, ulnar neuropathy in the right hand, hypoxemia, fibromyalgia with brain fog, severe depression, arthritis, anxiety, sciatica in both legs, and instability and balance issues. (AR 289). Mr. Scheibley's claim was denied on May 22, 2017. (AR 142-55). He then sought and appeared at a hearing before an Administrative Law Judge (ALJ). (AR 176-77). The hearing was held on October 9, 2018. (Tr. 54-96). Mr. Scheibley subsequently underwent a consultative examination on December 11, 2018. (AR 496-508). The ALJ denied Mr. Scheibley's claim in a written decision on March 27, 2019. (Tr. 10-25). The ALJ determined that Mr. Scheibley had only non-severe impairments that "cause no more than minimal limitation of his ability to perform basic work

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

activities" and none of these impairments, or any combination thereof, met a listing in the Code of Federal Regulations that would lead to a finding of disability. (AR 13-17). The ALJ found that Mr. Scheibley had the residual functional capacity (RFC) to perform light work, subject to the following limitations:

> [H]e can lift twenty pounds occasionally and ten pounds frequently. The claimant can stand and/or walk for a cumulative total of six hours during an eight-hour workday and can sit for a cumulative total of six or eight hours, if need be, during an eight-hour workday. He can occasionally stoop, kneel, and crouch, but he can never crawl. The claimant cannot perform work that would require him to reach, handle, finger, or feel on more than a frequent basis with his upper right extremity. The claimant cannot work in environments that would result in concentrated exposure to extreme cold or vibration and he can never work at unprotected heights. In addition, he can perform simple, routine, and repetitive work in an environment that does not require interaction with the public and requires only occasional and superficial interaction with coworkers and supervisors.

(AR 17).

Mr. Scheibley filed a Request for Review of the Hearing Decision/Order in April 2019, which was denied by the Appeals Council on February 27, 2020. (AR 229-31, 1-6). Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Disability Determination and the Burden of Proof

The burden of establishing a disability as defined by the SSA in 42 U.S.C. § 423(d) rests on the claimant. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The Social Security Administration has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 C.F.R §§ 404.1520, 416.920; *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

The Commissioner must evaluate:

(1) whether the claimant is presently engaged in a substantial gainful activity;
(2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;
(3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;
(4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and
(5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 754–55.

### III. Standard of Review

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (citation omitted). "Substantial evidence" is less than "a preponderance of the evidence," merely requiring that a reasonable person would find the evidence adequate to support the Commissioner's decision. *Id.* (citation omitted); *Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003).

### IV. Discussion

Mr. Scheibley raises two issues in his appeal before this Court: first, that the ALJ failed to support his analysis of the mental RFC with substantial evidence and second, that the ALJ failed to properly consider Mr. Scheibley's subjective reports of pain in assessing his physical RFC. The Court considers each argument in turn.

*A. The mental RFC was supported by substantial evidence.*

Mr. Scheibley claims that "[t]he ALJ's RFC is not supported by substantial evidence because he failed to give good reasons for dismissing the opinion of the treating provider, Dr. Wilson, and then failed to support the mental RFC with some medical evidence." (Doc. 11 at 7). The Court finds that the ALJ gave good reasons for dismissing Dr. Wilson's opinion and the mental RFC was supported by substantial evidence.

For claims filed before March 27, 2017, as Mr. Scheibley's claim was here, a treating source's opinion receives controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527. When an ALJ does not ascribe controlling weight to a treating source's opinion, they must give "good reasons" for the weight they assign, based on the length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency with the record as a whole, the practitioner's specialization, and other relevant factors. *Id.* The supportability factor is the extent to which the treating source "presents relevant evidence to support a medical opinion." *Id.* When a treating source does not present such relevant evidence, the ALJ may set their opinion aside. *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (citing *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) ("It is appropriate, however, to disregard statements of opinion by a treating physician that 'consist[s] of nothing more than vague, conclusory statements.'")). The ALJ

does not have a duty to seek additional evidence from a medical source who does not present supporting relevant evidence if the record "includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue." *Strongson*, 361 F.3d at 1071-72 (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)).

The ALJ gave little weight to Dr. Wilson's August 2015 opinion, explaining that Dr. Wilson rendered the opinion four months before Mr. Scheibley's alleged onset date and did not provide any treatment notes "sufficient to support Dr. Wilson's severe limitations." (AR 22-23). Dr. Wilson's opinion consisted only of a brief cover letter and a Medical Source Statement-Mental form (MSS-M). (AR 431-34). The cover letter included only a brief statement that Dr. Wilson had seen Mr. Scheibley for therapy biweekly or monthly as needed (but not how times or for how long), a terse list of issues they addressed, and a statement many that she retired on May 14, 2015. (AR 431). The MSS-M is a checkbox form in which Dr. Wilson's only annotations, aside from check marks, were a statement of Mr. Scheibley's mental diagnosis, the word "unknown" in response to a question about how many work days Mr. Scheibley would need to miss each month, and a note that he could engage in logical thinking despite his impairments. (AR 432-34). Dr. Wilson did not submit a narrative, treatment notes, or any other records to substantiate the boxes she checked off indicating mild, moderate, and marked limitations.[2]

The ALJ was correct not to assign controlling weight to Dr. Wilson's opinion, as it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527. After deciding not to assign Dr. Wilson's opinion controlling weight, the ALJ gave good reasons for the weight he assigned by considering the proper statutory factors, as far as they could be ascertained. *See Strongson*, 366 F.3d at 1071-72 (asserting that the ALJ does not have a duty to seek out more information from a treating physician who submits only unsupported conclusions if the record includes relevant evidence from another treating or examining physician). Dr. Wilson's opinion contained too little information for the ALJ to assess the length, nature, or extent of the treatment relationship, frequency of examination, or supportability of the conclusions. The ALJ did properly assess the consistency of Dr. Wilson's conclusions with the record as a whole, citing to specific contradictions between Dr. Wilson's opinion and those of physician assistant Jeff Leclair. (AR 23). The ALJ's consideration of Dr. Wilson's mental health

---

[2] Mr. Scheibley describes Dr. Wilson's cover letter as a "narrative letter" but, as detailed above, it is merely a short five-sentence paragraph. (*See* Doc. 11 at 8).

specialization is implicit in his comparison of her findings to those of Mr. Leclair, who also specialized in mental health and submitted detailed medical records from several appointments over the course of nine months. (AR 333-41, 455-69). In addition to the prescribed statutory factors, the ALJ also properly considered the relevant factor that Dr. Wilson's letter was dated nearly five months before the alleged onset date. (AR 22-23).

Having assigned little weight to Dr. Wilson's opinion, the ALJ properly grounded his mental RFC conclusion in the observations and clinical findings of medical source Mr. Leclair and consulting physician Dr. Ashok Patel. The ALJ cited to specific treatment and assessment records on specific dates to trace a trajectory of improving mental health and consistent reports of "normal mood and speech, normal attention and concentration, intact memory, normal thought processes, an average fund of knowledge, and good insight and judgment." (AR 22-23). Accordingly, this Court finds that Mr. Scheibley's mental RFC was supported by substantial evidence on the record.

> *B. The ALJ failed to properly consider Mr. Scheibley's subjective reports of pain in assessing his physical RFC.*

Mr. Scheibley alleges that "the ALJ's [physical RFC] determination relied on a mistaken classification of the record, overlooked relevant evidence, and did not address factors that bolstered Mr. Scheibley's credibility." (Doc. 11 at 13). This Court does not find that the ALJ overlooked relevant evidence or failed to address factors that bolstered Mr. Scheibley's credibility.[3] The Court does, however, find that the physical RFC determination relied on a mistaken classification of the record.

ALJs are required to assess a claimant's subjective allegations of pain by applying the five *Polaski* factors: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).[4] When evaluating the claimant's daily

---

[3] As the Plaintiff's Brief notes, Social Security Ruling (SSR) 16-3p rescinded a prior ruling that framed an ALJ's evaluation of a claimant's subjective reports as a credibility determination. (Doc. 11 at 13; 2016 SSR LEXIS 4 at *1). The second and third allegations are, therefore, essentially redundant. The Court does not find that the omission of the objective medical evidence cited by Mr. Scheibley mandates remand under the Court's "limited and deferential" standard of review. (Doc. 11 at 14-15). *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018); *see also Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (averring that "an ALJ's explanation need not be exhaustive").

[4] The Eighth Circuit recently explained that the *Polaski* standard remains good law even though the case was decided before SSR 16-3p was enacted, because SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied." *Noerper v. Saul*, 946 F.3d 738, 745 (8th Cir. 2020).

activities under the first *Polaski* factor, the ALJ must consider "the frequency and independence of activities performed by the claimant, as well as the claimant's ability to sustain these activities over a period of time." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing SSR 85-16); *Leckenby v. Astrue*, 487 F.3d 626, 633-34 (8th Cir. 2007) (applying the standard articulated in *Reed* to a physical RFC). If the record on these, or any, details is insufficient to support a determination, the ALJ "bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).

The ALJ improperly described several of Mr. Scheibley's life activities as inconsistent with his subjective reports of pain. Specifically, the ALJ cited Mr. Scheibley's ability to lift a gallon of milk, engage in online dating, and care for four small children as evidence that Mr. Scheibley's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 18). The ALJ's characterization of Mr. Scheibley's ability to lift a gallon of milk and engage in online dating is misconstrued and his reference to Mr. Scheibley's ability to care for four small children is inaccurate.

The ALJ did not hear or elicit sufficient testimony to reasonably determine that Mr. Scheibley's stated pain and manipulative limitations were inconsistent with other evidence on the record. His report included no evidence of the frequency or independence of the activities cited or Mr. Scheibley's ability, or inability, to "sustain these activities over a period of time." *Cf. Reed*, 399 F.3d at 923; (AR 18, 20). Mr. Scheibley testified that a gallon of milk was the heaviest item he could lift, but that doing so affected his balance and caused him pain in his hand, shoulders, and back. (AR 73). As for online dating, Mr. Scheibley testified that he met his second wife on a dating website, but he did not testify (and the ALJ asked no questions) as to how much computer usage that entailed or whether he used assistive technology to relieve the strain of typing. The ALJ's report referenced Mr. Scheibley's stated ability to lift a gallon of milk with none of the caveats in the testimony and made the unsupported, conclusory assertion that online dating "would have required routine use of a computer, which is inconsistent with his testimony as to the severity of his manipulative restrictions." (AR 20-21). The ALJ's failure to develop the record on the frequency, independence, and sustainability of Mr. Scheibley's milk-lifting and online dating left him without substantial evidence of any inconsistency between those activities and Mr. Scheibley's subjective report of his physical limitations.

The ALJ similarly failed to consider the frequency, independence, or sustainability of Mr. Scheibley's child-rearing activities and, in fact, relied on incorrect information. The ALJ's report cites several times to Mr. Scheibley's supposed ability to adopt and raise four young children.[5] During the period in question, which began on January 9, 2016, Mr. Scheibley was raising two, not four, minor children. He testified that he had two adopted minor daughters, a daughter who lived in Aurora with her children, a daughter in Tucson, and an adult stepson who lived in his home. (AR 83). He further testified that at the time he and his late wife adopted their minor children, which was prior to January 9, 2016, the couple "made it known to [state caseworkers] about our physical and mental state, and they didn't require any kind of physical to be done, or evaluation," and that his wife "took it upon herself to do a lot" of the childcare. (AR 89).

The ALJ did not solicit or receive any information on Mr. Scheibley's physical ability to care for his children. Although the ALJ expressed at the hearing that he was "kind of struggling" with how to reconcile Mr. Scheibley's alleged impairments with "adopting a couple of small kids," he did not question Mr. Scheibley either on the care he provided to his children before his remarriage or whether he received any assistance from friends or family members at any time. (AR 89). That Mr. Scheibley was a custodial parent on and after the alleged onset date of January 9, 2016 does not mean he experienced only minimal physical limitations or even that he was a capable parent. It only means he did not abandon his children. The ALJ's conclusion that raising children was inconsistent with Mr. Scheibley's alleged impairments is, like his conclusion about Mr. Scheibley's online dating, based only on assumptions he made after failing to develop the record fairly and fully, not on substantial evidence.

This Court need not weigh in on whether the evidence on the record would have sufficed to support the ALJ's physical RFC determination had Mr. Scheibley never testified. Mr. Scheibley did testify, and the ALJ cited to alleged inconsistencies between Mr. Scheibley's testimony and the objective medical evidence as one reason for his physical RFC determination. Had the ALJ developed the record fairly and fully, he would have been able to draw a better-informed

---

[5] In his evaluation of Mr. Scheibley's limitations, the ALJ wrote "the claimant has proven capable of adopting and raising four small children." (AR 16). The ALJ also wrote in his physical RFC analysis that Mr. Scheibley "cared for four children, including two children he adopted in 2012 and 2015 at ages nine and eighteen months respectively." (AR 18). He referenced the same evidence in his mental RFC analysis, writing that "[d]espite his reported symptoms, he has been able to care for four children" and "the claimant's allegations of debilitating limitations from mental health impairments is inconsistent with his ability to be approved by the state of Missouri to adopt young children." (AR 22).

conclusion about whether the nature and extent of Mr. Scheibley's reported activities were consistent with his alleged impairments. *See Snead*, 360 F.3d at 838. Because the ALJ did not develop the record fully and miscounted Mr. Scheibley's minor children, his physical RFC determination was grounded, at least in part, in misinformation, not substantial evidence on the record as a whole.

## V. Conclusion

For the reasons set forth herein, the Court finds the Commissioner's determination that Mr. Scheibley was not disabled is not supported by substantial evidence in the record as a whole and is therefore reversed and remanded for further proceedings consistent with this Order.[6] Judgment shall be entered in accordance with this Order.

Accordingly,

IT IS, THEREFORE, ORDERED that the decision of the Commissioner is reversed and remanded for further consideration, as set forth herein.

Dated this 27th day of January, 2021, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge

---

[6] If the Commissioner's decision is reversed, the case should ordinarily be remanded for further proceedings "out of our abundant deference to the ALJ." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (citation and quotation marks omitted). An immediate finding of disability is warranted only "if the record overwhelmingly supports such a finding." *Id.* (citation and quotation marks omitted).